## No. 2549

### Second Circuit

---

## WAHLER v. COLLINS

---

(May 7, 1926. Opinion and Decree.)

---

(*Syllabus by the Court.*)

1. **Louisiana Digest—Bills and Notes— Par. 194, 242; Obligations—Par. 153, 154.**

The clause in a promissory note: "And then ten per cent attorney's fees should this note be collected by law, or placed in the hands of an attorney for collection after maturity", is a stipulation providing for liquidated damages in the event it becomes necessary to collect the note by law, or to place it in the hands of an attorney for collection after maturity, cannot be allowed where the maker has not been put in default by having the note presented to him for payment at the place designated therein for payment.

Civil Code, 2126, provides: "Whether the principal obligation contain or do not contain, a term in which it is to be fulfilled, the penalty is forfeited only when he who has obligated himself either to deliver, to take, or to do, is in default."

2. **Louisiana Digest—Bills and Notes— Par. 194, 242; Obligations—Par. 153, 154, 178.**

Where a note providing for the payment of ten per cent attorney's fees in the event it is placed in the hands of an attorney for collection after maturity is made payable at a designated bank and the holder places it in the hands of an attorney before making demand for payment of it either on the maker or at the bank designated, attorney's fees are not owing and will not be allowed where the makers of the note, immediately after being sued on it, make a legal tender to the plaintiff or his attorney of the full amount of the principal and interest, and all costs incurred, but not attorney's fees; especially so when the evidence on trial shows that the makers of the note had offered to pay it before its maturity and were able and willing to pay it at maturity on presentation and demand for payment.

Article VI, Section 70, Act 64, of the Acts of the Legislature of 1904. (Negotiable Instruments Act.)

3. **Louisiana Digest—Tender—Par. 1, 4.**

Where a promissory note is, by its terms, payable at a specified bank, and the maker is willing and able to pay it there at its maturity, such ability and willingness are equivalent to a tender of payment upon his part.

Negotiable Instruments Act, supra.

4. **Louisiana Digest—Bills and Notes— Par. 207, 242.**

Before the makers of a note, stipulating for the payment of ten per cent attorney's fees if collected by law, or placed

in the hands of an attorney for collection after maturity, has been put in default by presentment of the note for payment to him in person or at the place designated therein for payment, attorney's fees are not owing and will not be allowed.

C. C. 1933, 2116.

State ex rel. Sweeney vs. Voorhies, 40 La. Ann. 2, 3 South. 460.

Hepp vs. Commagere, 10 Rob. 526.

Llorente vs. Gaitrie, 6 Mart. (N. S.) 624.

McIntosh vs. Gastenhofer, 2 Rob. 403.

Leeds & Co. vs. Fassman, 17 La. Ann. 32.

State vs. Judge of Second District Court, 16 La. Ann. 390.

Gobert vs. Municipality No. 1 and City of New Orleans, 11 La. Ann. 300.

Appeal from the Fifth Judicial District Court of Louisiana, Parish of Richland. Hon. John R. McIntosh, Judge.

Action by A. K. Wahler against Dr. Nash Collins, et al.

There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

Ellis & Ellis, of Rayville, attorneys for plaintiff, appellant.

Tobin R. Hodge, of Rayville; J. M. Munholland, of Monroe, attorneys for defendant, appellee.

## STATEMENT OF THE CASE

REYNOLDS, J.    Defendants purchased from one John M. Mitchell a plantation in Richland parish, Louisiana, for the price of $21,826.97, paying $12,826.97 in cash and for the balance of $9000.00 giving their solidary promissory note dated June 30, 1924, payable to their own order one year after its date at the Bank of Delhi, Delhi, Louisiana, and by them endorsed in blank, bearing interest at the rate of five per cent per annum from its date until paid, and stipulating payment of ten per cent attorney's fees if collected by law or placed in the hands of an attorney for collection after maturity, and secured by vendor's privilege and special mortgage on the property sold.

Plaintiff acquired the note before maturity from John M. Mitchell.

Plaintiff brought suit on the note against defendants on July 17, 1925. He alleged that he became the owner of it in due course, before maturity and for value; that it was given in part payment of certain described lands, as shown by copy of the act of sale attached and made part of his petition, and that it was unpaid notwithstanding "amicable demand for payment". He prayed for judgment for the amount of the principal and interest owing on the note and for ten per cent attorney's fees on the whole and that his vendor's privilege and special mortgage on the land be recognized and the property sold to pay the debt, interest, attorney's fees and costs.

Defendants answered denying that amicable demand for payment had been made and alleging, amongst other things:

"That said note, as stipulated on the face thereof, is payable at the Bank of Delhi, in Delhi, Louisiana, and further represent that respondents have at all times, from a short time prior to its maturity to the present time, had the money in the Bank of Delhi with which to pay the same upon presentation. Further represent that no demand was made upon respondents for the payment of said note until the filing of the suit, and further represent that it had not at any time been presented for payment.

"That immediately upon being advised of the filing of the suit, and before

service thereof, respondents made legal tender of the amount of the note, including principal, $9000.00, interest, $485.00, to Richland State Bank, which institution refused to receive the same, and informed your respondents that said note was then in the hands of Ellis & Ellis, attorneys, for collection, and thereupon respondents tendered said sum to Ellis & Ellis, alleged attorneys for plaintiff herein, who refused to receive the same. * * * Thereupon respondents deposited said sum and the accumulated interest in the Bank of Delhi to the credit of A. K. Whaler or the owner of said note. Now, your respondents further represent that the accrued court costs are as follows: Amount due the clerk, $11.55; amount due the sheriff, $6.48; that the interest to this date, namely, September 21, 1925, is $553.75, and principal $9000.00, and that your respondents neither legally nor equitably owe the attorney's fees * * * and that they have deposited in the Bank of Delhi to the order of plaintiff, principal, interest, and court costs as hereinabove set forth, namely, $9571.78. * * * Wherefore they pray that said amount be decreed by the court full payment and satisfaction of all sums due the plaintiff and to any other person or persons, and that plaintiff's suit be dismissed at his cost."

On these issues the case was tried and there was judgment in favor of the plaintiff and against defendants in solido for $9000.00 with 5 per cent per annum interest from June 30, 1924, to September 21, 1925, and sheriff's costs, $6.48, and clerk's costs, $11.55, being court costs up to September 21, 1925, with recognition of plaintiff's vendor's privilege and special mortgage on the land to secure the payment thereof, and taxing the plaintiff with all court costs incurred subsequent to September 21, 1925.

From this judgment the plaintiff has appealed.

### OPINION.

The only question in the case is whether or not defendants owe the attorney's fees.

It is not contended by plaintiff that the note was presented to either of the defendants or at the Bank of Delhi at its maturity and demand for payment made, or that such presentment and demand was made before placing it in the hands of attorneys for collection. His whole contention is that the note was presented to Doctor Nash Collins by Mr. Fred Morgan and payment demanded by him at the instance of Attorneys Ellis & Ellis.

Fred Morgan, as a witness for plaintiff, testified positively that he did present the note to Doctor Nash Collins at the Bank of Delhi and demanded payment of it.

Doctor Nash Collins, as a witness for defendants, swore just as positively that they did not present the note to him and demand payment of it, and Doctor Nash Collins is corroborated in this by Mrs. Audrey Arrendey, an employee in the Bank of Delhi, who heard the conversation between Fred Morgan and Doctor Nash Collins in the Bank of Delhi during which the demand for payment is alleged to have been made.

Plaintiff argues with great earnestness in brief that Fred Morgan is the only wholly disinterested witness who testified in the case. We have not been so impressed.

Mr. Morgan, who is the cashier of the Richland State Bank, did not receive the note for collection from the owner thereof in due course but received it from the plaintiff's attorneys. In his interview with Doctor Collins he did not tell him that the note had been placed in his hands by plaintiff's attorneys but, on the contrary, led him to believe that the note was held

by the Richland State Bank for collection and that it would be satisfactory to that bank if the note were paid the next day, Saturday, or the following Monday; when, as the evidence shows, at that time suit was actually being prepared in the office of the attorneys and citation was served on defendants on that same day.

Doctor Nash Collins testified, page 73:

"Q. State what happened, what was said by Mr. Morgan and what was said by you?

"A. On the seventeenth of July, about ten o'clock in the morning, Mr. Morgan phoned me at my residence and said that he was over in Delhi and wanted to see Mr. Wollank, but that Mr. Wollank was not in town, and asked me if I was coming up to the bank; I told him that I didn't intend to, because I was going down in the country on a call, but I would come up and see him; he said it would take only a few minutes; when I went to the bank Mr. Morgan told me that the note of Mr. Wollank and myself had been sent to the Richland State Bank for collection and that he was just coming over to Delhi and he brought the note along, and that he said that as Mr. Wollank was not in town that he supposed that I would prefer to await his return to pay same, and I asked Mr. Morgan then if it would be satisfactory for us to pay the note Saturday or Monday, that was the next day or the following Monday; he said that it would, that would be satisfactory, and that was about—that was all that was said about the note.

"Q. Well, what if anything ——?

"A. Well, wait, then Mr. Morgan did not demand payment and he did not present the note; Mr. Morgan said that he had the note, and after this conversation I asked Mr. Morgan if he would let me see it; he showed it to me to get the amount that we would have to pay the next day. When Mr. Wollank returned, he returned in about fifteen minutes, the train come in, I told Mr. Wollank then that Mr. Morgan had this note for collection, his bank, and that I had told him that we would pay it the next day, come over here to pay it. We were prepared to pay it, if Mr. Morgan had made the

demand on me to pay it, I would have paid it personally; we had the money; we didn't ask him for any extension; we just asked him if it would be satisfactory to pay the note the next day when Mr. Wollank returned; I had the money to pay the note; we did not ask him for any time; we just asked him if it would be satisfactory to pay it the next day.

* * * *

"Q. Now, Doctor Collins, did anyone communicate with yourself and Mr. Wollank in regard to this note * * *?

"A. Judge, the note has never been presented to me for payment or demand of payment made by anyone. Mr. Morgan just simply said he was coming to Delhi; he talked so unconcerned about it, I thought maybe he was over there on a pleasure trip, just put the note in his pocket if we wanted to pay it it would be all right, if we didn't want to pay it it would be all right. * * *

"Q. Did anybody make any demand for the payment of that note either verbally or written? * * *

"A. There has nobody ever made demand on me for the payment of the note."

Mrs. Audrey Arrender testified, pages 80 and 81:

"A. I heard Doctor Collins ask Mr. Morgan if it would be satisfactory to him to take up the note Saturday or the following Monday.

"Q. Now what did Mr. Morgan say?

"A. Mr. Morgan said it would be satisfactory to take the note up Saturday or the following Monday."

There is much conflict between the testimony of Fred Morgan and that of Doctor Nash Collins. The district judge who heard and saw the witnesses testify accepted the testimony of Doctor Collins as corroborated by that of Mrs. Arrender, and we see no reason to disagree with his findings.

It is therefore ordered, adjudged and decreed that the judgment appealed from be affirmed.